# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 3, 2013

## JIMMY YARBRO v. STATE OF TENNESSEE

**Appeal from the Circuit Court for McNairy County**
**No. 2725     J. Weber McCraw, Judge**

**No. W2013-00618-CCA-R3-PC  - Filed December 26, 2013**

Jimmy Yarbro ("the Petitioner") pleaded guilty to theft of property of $10,000 or more and burglary. Pursuant to the plea agreement, the trial court sentenced the Petitioner to an effective sentence of eight years, with restitution and manner of service to be determined by the trial court. Following a sentencing hearing, the trial court denied alternative sentencing and ordered that the Petitioner serve his sentence in confinement. The court also ordered restitution of $17,000 in increments of $200 per month beginning sixty days after the Petitioner's release. The Petitioner subsequently filed for post-conviction relief, which the post-conviction court denied following an evidentiary hearing. The Petitioner now appeals, arguing that he received ineffective assistance of counsel in conjunction with his plea. Upon our thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment
### of the Circuit Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

George D. Norton, Jr., Selmer, Tennessee, for the appellant, Jimmy Yarbro.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Mike Dunavant, District Attorney General; and Bob Gray, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

On February 14, 2011, the Petitioner pleaded guilty to theft of property of $10,000 or more and burglary. At the plea submission hearing, the State recited the factual basis for the Petitioner's plea as follows:

> [O]n March 3rd of 2010, [the Petitioner] entered a building, garage, outbuilding, belonging to Johnny L. Cox here in McNairy County without Mr. Cox's permission. It was not open to the public and upon entry into that building he removed several items from it, including some auto parts and tools, a more particular description of those items being unknown at this point but the value would be at over $10,000.00 but less than $60,000.00.

Pursuant to the plea agreement, the trial court sentenced the Petitioner as a Range II, multiple offender, to eight years for each conviction and ordered that the sentences be run concurrently, for an effective sentence of eight years. Following a sentencing hearing, the trial court denied alternative sentencing and ordered that the Petitioner serve his sentence in confinement. The court also ordered restitution of $17,000 in increments of $200 per month beginning sixty days after the Petitioner's release.

The Petitioner subsequently filed a petition for post-conviction relief, alleging multiple instances of ineffective assistance of counsel ("trial counsel"). At the post-conviction hearing, the Petitioner testified that he retained trial counsel after the Petitioner had waived his preliminary hearing. At their initial meeting, the Petitioner and trial counsel reviewed the Petitioner's case, and trial counsel "told [the Petitioner] he'd check into it." According to the Petitioner, trial counsel met with him on one other occasion but only told the Petitioner that he (trial counsel) had not yet received the State's discovery and gave the Petitioner a court date.

At some point, they met at the courthouse. Trial counsel told the Petitioner he had seen one picture "but it wasn't much to it," and they discussed the Petitioner's probation violation[1] that also was pending. The Petitioner identified at the post-conviction hearing the picture which trial counsel had not shown him prior to trial as a picture of a motor that was not "unique" and did not have an identifiable serial number. The Petitioner's contention was that the victim would not have been able to identify the motor as his own simply from the

---

[1] The Petitioner later refers to this violation as a community corrections violation.

photograph. He acknowledged on cross-examination that some motors are unique and easily identifiable.

According to the Petitioner, trial counsel told him that the State had made a plea offer and that it was in the Petitioner's best interest to accept the offer. The Petitioner then accepted the State's offer. The Petitioner confirmed that, at the time he accepted the State's offer, he had not seen any of the State's evidence against him. He agreed that trial counsel discussed with him the possibility of going to trial but stated that trial counsel had told him that the plea offer was more favorable than the potential sentence if the Petitioner were to be convicted at trial. Trial counsel also told the Petitioner that pleading guilty would allow the Petitioner to receive alternative sentencing. He denied that trial counsel discussed with him any possible defense at trial. When asked why he decided to plead guilty, the Petitioner stated, "Because [trial counsel] had informed me that challenging the State and fighting it would present the 15 year sentence and that I would serve nine before I could be eligible to go home and I trusted his judgment on what he informed me to do."

According to the Petitioner, had he viewed the State's discovery prior to his guilty plea, he would not have pleaded guilty and instead would have gone to trial. However, he pleaded guilty relying solely on trial counsel's advice. He was not aware of any witnesses the State intended to call at trial. The Petitioner, in pleading guilty, relied on the possibility of alternative sentencing, although he acknowledged that trial counsel told him he might not receive alternative sentencing.

The Petitioner testified that, at the time of the incident, he drove a camouflage 1989 Chevrolet S15. At the time that he pleaded guilty, he was unaware of a potential witness named Natalie Russom and that, in her statement, she stated that the vehicle used in the theft was a black Suburban pickup.

On cross-examination, the Petitioner stated that he waived his right to a preliminary hearing because his counsel at that time (prior to retaining trial counsel) insinuated that the State would revoke the Petitioner's community corrections' sentence if he were to proceed with the preliminary hearing. He agreed that, at his plea submission hearing, the trial court reviewed with him his rights and his decision to waive those rights and plead guilty.

When asked how trial counsel did not adequately investigate his case, the Petitioner stated that trial counsel failed to call two potential witnesses that the Petitioner suggested – "Mr. Cox's sister and her husband." The Petitioner also mentioned another potential witness,

Ricky Joe Poindexter.[2]  Additionally, the Petitioner alleged that trial counsel never gave him a copy of his scheduling order.

The Petitioner confirmed that trial counsel had represented him on several prior occasions, including another theft case in which the Petitioner pleaded guilty.  He also acknowledged that he had several other convictions, all of which were the result of guilty pleas.  The Petitioner stated that he trusted trial counsel because of trial counsel's representation of the Petitioner in the past.  He acknowledged that the trial court reviewed with him his charge and potential sentence.  The Petitioner also confirmed that the State intended to try him as a career offender but that, by pleading guilty, he was sentenced as a multiple offender.

On redirect examination, the Petitioner agreed that he pleaded guilty under the belief that a viable defense at trial would have been "an uphill battle."  However, had he seen the State's discovery, he would have thought differently and would have proceeded to trial.  He contended that trial counsel never told him that he spoke with the State's witnesses.

Norma Sanders, the Petitioner's mother, testified that, at the Petitioner's request, she went on several occasions to trial counsel's office to ask that he visit the Petitioner.  According to Sanders, trial counsel would tell her that he would visit the Petitioner in jail, but he never did.

Trial counsel testified that he had represented the Petitioner on several occasions prior to his representation of the Petitioner in this case.  According to trial counsel, Sanders first contacted him about representing the Petitioner in this case after the Petitioner had been indicted.  At that time, trial counsel filed "all the generic motions," which included motions for discovery.  He confirmed that he received discovery from the State, including a photograph and witness statements.

Trial counsel acknowledged that he never showed the Petitioner the State's discovery but stated that the Petitioner never asked to see it.  He confirmed that he spoke with the victim, Johnny Cox, but stated that he did not speak "extensively" with Deputy McNeal, the investigator in this case.  Trial counsel clarified that he had known Deputy McNeal "a long time" and that he might have brought up this case "in conversation."

Trial counsel testified that he met with the Petitioner on at least five occasions, including visiting the Petitioner twice at the jail.  Regarding favorable witnesses, he stated that the Petitioner might "have mentioned some witnesses" but did not ask trial counsel to

_____

[2] These witnesses did not testify at the post-conviction hearing.

-4-

speak with anyone. Regarding a potential defense, trial counsel stated that he and the Petitioner had discussed an alibi defense but that the Petitioner was not able to provide an alibi. Trial counsel did not believe that he could have done anything differently in his representation of the Petitioner that would have been more effective. He confirmed that he tried to convince the trial court to consider probation in sentencing the Petitioner.

On cross-examination, trial counsel stated that he did not speak with Nadine Russon or Jerry Hardin, even though he acknowledged that he was aware that both of these individuals were listed as witnesses for the State. The Petitioner had made it clear to trial counsel that he wanted to plead guilty, so trial counsel had not prepared for trial.

Trial counsel's associate in his law practice ("Associate") testified that he also had represented the Petitioner but that this representation was related to a divorce and other civil matters. Pertaining to the present case, Associate recalled trial counsel meeting with the Petitioner at least once at the jail and at least once at the courthouse. Associate confirmed that he also was present on these occasions. To his recollection, the Petitioner and trial counsel did not discuss the facts of the case but rather what sentence the Petitioner would receive from the trial court.

At the conclusion of the hearing, the post-conviction court took the matter under advisement and issued a written order denying relief on February 7, 2013. The post-conviction court, in its order denying relief, accredited trial counsel's testimony over that of the Petitioner. The court also determined that the Petitioner had failed to establish deficient performance or prejudice on the part of trial counsel as to any of the Petitioner's ineffectiveness allegations. The Petitioner timely appealed, alleging multiple instances of ineffective assistance of counsel in conjunction with his guilty plea.

## Analysis

Relief pursuant to a post-conviction proceeding is available only when the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006); see also Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising

mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

The Petitioner argues that he was denied effective assistance of counsel. The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[3] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688). Our supreme court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

---

[3] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

The Petitioner asserts that trial counsel failed to inform the Petitioner of his potential defenses at trial. He also argues that trial counsel failed to review discovery with the Petitioner. The Petitioner, at the post-conviction hearing, presented a photograph that the State had in its discovery depicting a motor that the victim alleged was stolen. According to the Petitioner, however, the quality of the picture and the uniformity of the motor would have made it impossible for the victim to have identified the motor as his own from the picture alone. Based on this evidence, the Petitioner now claims that he would have gone to trial had trial counsel shown him this picture before the plea.

We first will assess the prejudice prong. At the post-conviction hearing, trial counsel testified that the Petitioner had made it clear to trial counsel that he wanted to plead guilty and, for that reason, trial counsel did not prepare for trial. Trial counsel had represented the

-7-

Petitioner on several other occasions in the past, all of which had resulted in a guilty plea by the Petitioner. Trial counsel also stated that the Petitioner never asked to view the State's discovery, which did include the photograph. The Petitioner testified that part of the reason he pleaded guilty was because he would receive a lesser sentence than if he were convicted at trial. He also hoped that, by pleading guilty, he would receive probation. The Petitioner also confirmed that the State intended to try him as a career offender but that, by pleading guilty, he was sentenced as a multiple offender. The post-conviction court implicitly discredited the Petitioner's testimony that, had trial counsel shown him the State's discovery, he would have proceeded to trial, and the evidence does not preponderate against this credibility finding. See Momon, 18 S.W.3d at 156. Moreover, we fail to see how this rather innocuous photograph constitutes clear and convincing evidence sufficient to establish a reasonable probability that, but for trial counsel's failure to show the photograph to the Petitioner, the Petitioner would have insisted on going to trial. See Hill, 474 U.S. at 59. Accordingly, the Petitioner has failed to establish prejudice, and he is entitled to no relief on this issue.[4]

Finally, the Petitioner asserts that trial counsel did not meet with the Petitioner enough to adequately discuss the case prior to the Petitioner's guilty plea. In the post-conviction court's order denying relief, the court stated, "[Trial counsel] provided adequate assistance; he met with petitioner and discussed the case, including possible sentences."

The evidence presented at the post-conviction hearing does not preponderate against the post-conviction court's findings in this regard. Trial counsel testified at the post-conviction hearing that he met with the Petitioner on at least five occasions prior to the Petitioner's guilty plea. The Petitioner testified that he met with trial counsel on at least three occasions, including the meeting with trial counsel immediately prior to the Petitioner's guilty plea submission. Therefore, the Petitioner has failed to establish that trial counsel was deficient in his representation as to the number of times that he met with the Petitioner. Accordingly, we need not address the prejudice prong. See Goad, 938 S.W.2d at 370. Therefore, the Petitioner is entitled to no relief on this issue.

---

[4] Because the Petitioner has failed to demonstrate prejudice on this issue, we need not address the deficiency prong. See Goad, 938 S.W.2d at 370.

## CONCLUSION

For the foregoing reasons, we conclude that the Petitioner is not entitled to post-conviction relief.  Therefore, we affirm the judgment of the post-conviction court.


_____
JEFFREY S. BIVINS, JUDGE